FILED

2016 NOV 15 PM 3: 10

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL WARNER, CDCR #J-19886,<br><br>                    Plaintiff,<br><br>    vs.<br><br>P. VELARDI; DR. COOK; K. SELLY; R. WALKER; M. GLYNN; L.D. ZAMORA; A. CASTRILLION; P. VAUGHN; S. OSBORNE<br><br>                    Defendants. | Case No.: 3:16-cv-01924-BEN-DHB<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS PURSUANT TO 28 U.S.C. § 1915(a) [Doc. No. 2]**<br><br>**2) DISMISSING DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)**<br><br>**AND**<br><br>**2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON NAMED DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Earl Warner ("Plaintiff"), currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California, and proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. No. 1), together

with a Motion to Proceed In Forma Pauperis ("IFP") (Doc. No. 4). Plaintiff claims medical and inmate appeals officials at RJD violated his Eighth and Fourteenth Amendment rights. Plaintiff seeks declaratory and injunctive relief, as well as general, compensatory and punitive damages.

## I.  Plaintiff's Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2014). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP motion, Plaintiff has submitted certified copies of his prison trust account statements at RJD pursuant to 28 U.S.C. § 1915(a)(2) and S.D. CAL. CIVLR 3.2.; *Andrews*, 398 F.3d at 1119. These statements show that Plaintiff has an available balance of zero in his inmate trust account at the time of filing. Therefore, the Court assesses no initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because it appears Plaintiff is unable to pay any initial fee. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Accordingly, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. No. 4), declines to "exact" any initial filing fee because his prison certificate shows he "has no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Secretary of the CDCR, or his designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

## II. Initial Screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A

### A. Standard of Review

Notwithstanding Plaintiff's IFP status or the payment of any filing fees, the PLRA also requires the Court to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or

conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss any complaint, or any portion of a complaint, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6).").

However, while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not

///

"supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B.   Plaintiff's factual allegations

On July 26, 2012, Plaintiff "accidentally caused a serious injury to his right hand when he hit a cement wall" in his cell. (Compl. at 10[2].) The following day, Plaintiff submitted a "request for medical treatment." (*Id.*) Plaintiff was seen by a registered nurse on July 28, 2012 who referred him to Defendant Velardi, a nurse practitioner. (*Id.*) Velardi examined Plaintiff's hand on July 30, 2012 and ordered that an x-ray be taken of his hand. (*Id.* at 11.)

Plaintiff claims that "despite the extremely swollen condition of Plaintiff's hand," and Plaintiff's complaints of pain, Velardi "refused to proscribe any pain management medication for Plaintiff." (*Id.*) Instead, Plaintiff alleges Velardi became "openly hostile and arrogant" and told Plaintiff that he was "not telling her the truth about how he had sustained his injury." (*Id.*) Further, Plaintiff claims that because of Velardi's "personal belief that Plaintiff was dishonest with her," Velardi refused to "cause Plaintiff to be escorted to the Emergency Treatment Center." (*Id.* at 12.)

On August 1, 2012, Plaintiff received the x-ray of his hand. (*Id.* at 11-12.) Immediately following the procedure, Plaintiff "inquired of the radiologist, the extent of his injury." (*Id.* at 12.) Plaintiff alleges that the radiologist informed him "you'll have to wait until you have seen a doctor and ask the doctor." (*Id.*)

Plaintiff waited ten (10) days before "submitting another request for emergent follow-up treatment." (*Id.*) On August 14, 2012, Plaintiff "was seen by another nurse." (*Id.*) This unnamed nurse reviewed Plaintiff's medical file including the "extent of the injury reflected" in the x-ray taken on August 1, 2012 and informed Plaintiff "I don't understand why there was nothing done about this then." (*Id.* at 13.) This nurse had

---

[2]   The Court will refer to the page numbers imprinted by the Court's electronic case filing system.

1  Plaintiff "taken to the emergency treatment area" where he was examined by Defendant
2  Cook. (*Id.*) Plaintiff alleges Cook placed a "soft cast" on Plaintiff's hand. (*Id.*)
3  However, Plaintiff claims Cook "refused to proscribe Plaintiff any pain medication
4  despite Plaintiff's complaints of extreme pain and suffering." (*Id.*)

5        On August 15, 2012, Plaintiff was again seen by Velardi. (*Id.*) Plaintiff claims
6  that after "pleading with" Velardi, she prescribed "Tylenol #3" for fourteen (14) days.
7  (*Id.*) On August 29, 2012, Plaintiff was "transported to the private office of the
8  Orthopedic Specialist." (*Id.* at 14.) Plaintiff claims this specialist "informed Plaintiff that
9  the institution had allowed for too much time to have expired" and that "as a consequence
10 the bone had already begun to mend itself to the other end of the bone from which it had
11 been severed." (*Id.*) Plaintiff was told the only options were "to re-break the bone, and
12 properly cast it" or have surgery. (*Id.*). Plaintiff claims he was told that neither option
13 "would provide him normal formal use of the hand again." (*Id.*) In addition, Plaintiff
14 was told that he would "develop arthritis in his right hand," as well as "suffer a
15 diminished capacity of use of it for the remainder of his life." (*Id.*)

16       On August 29, 2012, Plaintiff's prescription of pain medication had run out and he
17 claims Defendants refused to renew the prescription. (*Id.*) Plaintiff then submitted an
18 administrative grievance relating to the claims in this matter. He claims Velardi
19 responded to the initial level of review denying most of Plaintiff's relief that he sought.
20 (*Id.* at 15-16.) He further alleges that Velardi's "decisions were supported by Defendants
21 Walker, Seely, Glynn, Zamora when they each had responsibility of reviewing the
22 appeal, and the decisions rendered on the merits of Plaintiff's claims."

23     **B.**    **Defendants Castrillion, Vaughn, Osborne**

24       Plaintiff lists A. Castrillion, P. Vaughn or S. Osborne as Defendants but the only
25 reference to these individuals are the claims that they are Radiologists at RJD with the
26 responsibility of "providing radiological services to inmate patients at RJD." (Compl. at
27 9-10.) The body of Plaintiff's Complaint does not provide any specific factual allegation
28 linking any of these three named individuals to Plaintiff's medical treatment.

Prison officials are liable only if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). However, nothing in Plaintiff's Complaint supports a "reasonable inference" that Defendants Castrillion, Vaughn or Osborne acted with deliberate indifference to his plight. *Iqbal*, 556 U.S. at 678. "In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard.") (citing *Hallett v. Morgan*, 296 F.3d 732, 1204 (9th Cir. 2002); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)). A difference of opinion between a prisoner and his doctors as to the appropriate course or type of medical attention does not amount to deliberate indifference, *see Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), and delays do not by themselves show deliberate indifference, unless the delay is alleged to be harmful. *See McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Here, Plaintiff offers no factual allegations that any of these named Defendants were involved in his care or that they had any duty, outside of providing an x-ray and report, to implement any medical care on his behalf. Plaintiff admits he received the x-ray and he acknowledges that the report of the findings were placed in his medical record.

Thus, the Court finds that Plaintiff has failed to allege facts to show that Defendants A. Castrillion, P. Vaughn or S. Osborne actually knew of, yet disregarded his serious medical needs, *see Gibson v. Cnty. of Washoe*, Nev., 290 F.3d 1175, 1193 (9th Cir. 2002) ("[D]eliberate indifference requires the defendant to be subjectively aware that serious harm is likely to result from a failure to provide medical care.").

///

For these reasons, the Court finds that Plaintiff has failed to state a plausible claim for relief against Defendants A. Castrillion, P. Vaughn or S. Osborne subject to suit pursuant to 42 U.S.C. § 1983. *Id.*

### C.   Claims against Defendants Seely, Walker, Glynn, Zamora

Plaintiff seeks to bring Fourteenth Amendment claims against Defendants Seely, Walker, Glynn, Zamora based on their response to his administrative grievances. (Compl. at 16-17.) Plaintiff does not allege that any of these Defendants were personally involved in his medical care. While the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). State statutes and prison regulations may grant prisoners liberty or property interests sufficient to invoke due process protection. *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). However, to state a procedural due process claim, Plaintiff must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000).

The Ninth Circuit has held that inmates have no protected property interest in an inmate grievance procedure arising directly from the Due Process Clause. *See Ramirez v. Galaza*, 334 F.3d 850, 869 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure") (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure")). Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. *Mann*, 855 F.2d at 640. *See also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

In addition, Plaintiff has failed to plead facts sufficient to show that Defendants deprived him of a protected liberty interest by allegedly failing to respond to any particular prison grievance in a satisfactory manner. While a liberty interest can arise from state law or prison regulations, *Meachum*, 427 U.S. at 223-27, due process protections are implicated only if Plaintiff alleges facts to show that Defendants: (1) restrained his freedom in a manner not expected from his sentence, and (2) "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, Plaintiff pleads no facts to suggest how Defendants' allegedly inadequate review or failure to consider inmate grievances restrained his freedom in any way, or subjected him to any "atypical" and "significant hardship." *Id.* at 483-84.

Therefore, Plaintiff's Complaint also fails to state a claim against Defendants Seely, Walker, Glynn and Zamora upon which relief can be granted. *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### C. Named Defendants

As to the remaining Defendants, Velardi and Cook, both of whom *are* alleged to have personally violated Plaintiff's Eighth Amendment rights by failing to providing him with inadequate medical care, the Court finds Plaintiff's Complaint contains claims sufficient to survive the "low threshold" for proceeding past the *sua sponte* screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012).

Accordingly, the Court will direct the U.S. Marshal to effect service upon the remaining Defendants on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); FED. R. CIV. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

///

### III. Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 4);

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Scott Kernan, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001;

4. **DISMISSES** Defendants Seely, Walker, Glynn, Zamora, Castrillion, Vaughn, and Osborne as parties to this case based on Plaintiff's failure to state a claim against them pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b);

5. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (Doc. No. 1) upon the named Defendants P. VELARDI and COOK and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of these named Defendants. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint and the summons so that he may serve these Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package;

6. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the named Defendants as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(3);

7. **ORDERS** the named and served Defendants to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the defendant is required to respond); and

8. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon the named Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to FED. R. CIV. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. CAL. CIVLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon Defendants may be disregarded.

**IT IS SO ORDERED.**

Dated: November 5, 2016

HON. ROGER T. BENITEZ
United States District Judge