UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| EARL WARNER, | Case No.: 16-cv-1924-LAB (DHB) |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| v. | |
| P. VELARDI, et al., | **(ECF No. 43)** |
| Defendants. | |

This Report and Recommendation is submitted to the Honorable Larry A. Burns, United States District Judge, pursuant to 28 U.S.C. § 636 and Local Rule 72.3(f) of the United States District Court for the Southern District of California.

**PROCEDURAL HISTORY**

Plaintiff, a state prisoner, is proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. On November 3, 2017, plaintiff filed the operative complaint in this case. (ECF No. 33.) Plaintiff alleges that, on or about July 27, 2012, he caused a serious injury to his right hand when he hit a cement wall with his fist within his cell quarters. (*Id.* at 3.) Plaintiff claims that Nurse Practitioner Velardi ("NP

Velardi") violated his Eighth Amendment rights by failing to provide him suitable pain medication and failing to have an x-ray taken of plaintiff's hand immediately. (*Id.* at 4, 10.) He also claims Dr. Cook violated his Eighth Amendment rights when he failed to provide plaintiff with suitably strong pain medication. (*Id.* at 6, 10.)

On April 3, 2018, defendants NP Velardi and Dr. Cook (hereinafter "defendants") filed a Motion for Summary Judgment, along with a supporting Memorandum of Points and Authorities. (ECF No. 43.) In support of their Motion, the defendants also filed their own declarations, a declaration from a medical expert, a *Rand* warning, and a compendium of attached exhibits. (*See* ECF Nos. 43-2 through 43-6.)

On April 13, 2018, the Court provided plaintiff with the requisite notice of the requirements for opposing a summary judgment motion in accordance with *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999). The notice included the requirement of Local Rule 7.1(f)(3)(b) that plaintiff's opposition "must contain a brief and complete statement of all reasons in opposition to the position taken by defendants, an answering memorandum of points and authorities, and copies of all documentary evidence upon which you are relying." (ECF No. 44.)

On June 20, 2018, plaintiff filed his Opposition to Motion for Summary Judgment, which included the following documents: (1) plaintiff's Disputed Facts in Opposition to Motion for Summary Judgment; (2) Memorandum of Points and Authorities in Support of Opposition to Motion for Summary Judgment; (3) plaintiff's Declaration in Support of Opposition to Motion for Summary Judgment; (4) California Prison Health Care Services ("CPHCS") Policy and Procedure, Volume 4, Chapter 28A – Nurse Practitioner Policy; (5) California Correctional Health Care Services ("CCHCS"), Volume 4, Chapter 1.3, Section 4.1.3 – Scheduling and Access to Care Procedure; (6) CCHCS Mobile and Radiology Specialty Services Policy and Procedure, Volume 4, Chapter 30; (7) Overview of Health Care Services; (8) Declaration of Steven Moore in Support of plaintiff's Opposition to Motion for Summary Judgment; (9) Declaration of Shannon Coryell in Support of

plaintiff's Opposition to Motion for Summary Judgment; (10) Declaration of Dave Hannah in Support of plaintiff's Opposition to Motion for Summary Judgment; (11) Forms and Document from plaintiff's exhausted CDCR 602 Health Care Appeal; (12) a Nonformulary Drug Request From dated May 8, 2012; (13) multiple Medication Reconciliation Sheets dated between June 13, 2012 and October 30, 2012; (14) multiple Physician Orders forms (CDC 7221 Form); (15) multiple Primary Care Provider Progress Notes (CDCR 7230-M Form); (16) his Health Care Services Request form; (17) an Encounter Form: Musculoskeletal Complaint (Non-Traumatic) dated October 9, 2012; (18) multiple Interdisciplinary Notes (CDC 7230 Form); (19) Health Care Transfer Information (CDCR 7371 Form); (20) multiple Chronic Care Follow-up Visit/Progress Notes from the California Men's Colony; and (21) Medical Progress Notes from R.J. Donovan Correctional Facility ("RJD"). (ECF No. 48.) On July 6, 2018, defendants filed their Reply. (ECF No. 49.)

For the reasons discussed hereafter, the Court recommends that the summary judgment motion be granted.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

The Court must render summary judgment if the papers "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248. Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). At the summary judgment stage, a judge's function is not to weigh the evidence or determine the truth of the matter but, rather, to determine whether there is any genuine

issue for trial. *See Anderson*, 477 U.S. at 249; *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc).

Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Moreover, summary judgment cannot be avoided by relying solely on conclusory allegations unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). In order to demonstrate the existence of a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Generally, self-serving declarations and affidavits, without more, cannot create a genuine issue. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[The Ninth Circuit] has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))). Summary judgment analysis "focuses on whether the nonmoving party has come forward with sufficiently 'specific' facts from which to draw reasonable inferences about other material facts that are necessary elements of the nonmoving party's claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 632 n. 3 (9th Cir. 1987). Accordingly, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1996). Courts can therefore disregard a self-serving declaration for purposes of summary judgment when it states only conclusions and not such facts as would be admissible in evidence. *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007).

However, in *Phan*, 500 F.3d at 909, the Ninth Circuit also recognized that party's affidavits are always self-serving and therefore "[i]n most cases, [ ] that an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." The *Phan* court also noted that information based on

private first person knowledge will often lack corroboration and this should not lead to defeat at the summary judgment stage. *Id.* at 910. ("[I]t is unremarkable that the defendants could not otherwise corroborate their personal conversations."). *Id.* "A judge must not grant summary judgment based on his determination that one set of facts is more believable than another." *Nelson v. City of Davis,* 571 F.3d 924, 929 (9th Cir. 2009).

## SUMMARY OF UNCONTROVERTED MATERIAL FACTS

Based on the evidence presented and in light of the foregoing principles, the Court finds that the following material facts are uncontroverted for purposes of defendants' summary judgment motion.

On or about July 27, 2012, plaintiff injured his right hand when he punched a cement wall within his assigned cell. (ECF No. 33 at 3.)

After plaintiff submitted a Health Care Services Request form on July 27, 2012, he was called to the Facility C Yard Sick Call Clinic on July 30, 2012, where he was first seen by Nurse S. Boucher. (ECF No. 43-6 at 7; ECF No. 48 at 22-23.) Nurse Boucher noted that plaintiff's injury was "no[t] urgent or emerging" and that plaintiff had wrapped his hand in an ace bandage. (ECF No. 43-6 at 7; ECF No. 48 at 26.) According to plaintiff, following his consultation with Nurse Boucher, he was seen that same day by NP Velardi. (ECF No. 48 at 24.) It is uncontroverted that NP Velardi ordered a "routine" x-ray of plaintiff's right hand on July 30, 2012. (ECF No. 43-6 at 9; ECF No. 48 at 4, 24, 111.)

NP Velardi's July 30, 2012 order did not include an order for pain medication. However, plaintiff's medical records evidence that NP Velardi already had prescribed a 30-day supply of a pain reduction drug, Naproxen, to plaintiff on July 24, 2012. (ECF No. 48 at 108-09.)

On August 1, 2012, plaintiff's right hand was x-rayed per NP Velardi's order. The x-ray found "evidence of a mildly displaced fracture seen at the midshaft of the fourth metacarpal. Moderate soft tissue swelling is noted. Remaining osseous structures and joint spaces are preserved." (ECF No. 43-6 at 11.) On the x-ray report, NP Velardi made a

5

16-cv-1924-LAB (RNB)

handwritten notation dated August 7, 2012, indicating that follow up was needed. (*See ibid*; ECF No. 43-4 at 2.) She also filled out a Notification of Diagnostic Test Results on August 7, 2012, notifying plaintiff that he would be scheduled for a followup appointment to go over the x-ray results "ASAP Next Available." (ECF No. 43-6 at 13.)

On August 12, 2012, plaintiff submitted another Health Care Services Request requesting followup for his right hand injury and his constant pain. (ECF No. 43-6 at 15; ECF No. 48 at 114.)

On August 14, 2012, plaintiff was seen by Nurse Lacuran, who referred him to defendant Dr. Cook ("Dr. Cook") in the Treatment and Triage Area ("TTA") for further evaluation and management. (ECF No. 43-6 at 15; ECF No. 48 at 114.) The same day, Dr. Cook examined plaintiff and noted that he had tenderness to palpitation over a right hand deformity, that he mainly complained that he was in a lot of pain, and that he wanted medical management of pain. (ECF No. 43-6 at 17; ECF No. 48 at 115.) Dr. Cook advised plaintiff to continue with his Naproxen and to add Tylenol for pain, to which plaintiff became argumentative and threatened to file paperwork. (*See id.*) In addition to prescribing Tylenol for plaintiff's pain, Dr. Cook placed an ulnar gutter splint on plaintiff's hand for protection of the area, ordered a new x-ray of the right hand, submitted an urgent referral for an initial orthopedic outpatient consultation of plaintiff's fracture, and directed a follow-up visit with NP Velardi. (ECF No. 43-6 at 17, 19, 24; ECF No. 48 at 117.)

Plaintiff saw NP Velardi the next day. She noted that plaintiff's hand was splinted and that he had an orthopedic referral pending. (ECF No. 43-6 at 21; ECF No. 48 at 122.) NP Velardi also noted that plaintiff requested "something stronger pain" and said that he couldn't sleep. (*Id.*) In response to plaintiff's request, NP Velardi prescribed a 14 days' supply of Tylenol #3 with Codeine. (ECF No. 43-4 at 3; ECF No. 48 at 117, 119.) On the order for the pain medication, NP Velardi wrote the word "Stat" and circled it, indicating to the pharmacy that she was requesting they fill this prescription quickly for plaintiff. (ECF No. 43-2 at 5.)

On August 23, 2012, Dr. Cook reviewed and signed the transcription of plaintiff's August 14, 2012 right hand x-ray that found a "complete fracture of the fourth meta carpal bone." On the transcript, Dr. Cook also noted that plaintiff was "Seen-Splinted" and that an orthopedic referral was already scheduled. (ECF No. 43-6 at 24.) Dr. Cook also completed a Notification of Diagnostic Test Results form on August 23, 2012, notifying plaintiff that he would be scheduled for a follow up medical appointment to go over the x-ray results and had already been scheduled for a chronic care appointment. (ECF No. 43-6 at 26.)

On August 29, 2012, plaintiff was seen by Dr. David L. Daugherty, an orthopedic surgeon from Tri-City Medical Center. Dr. Daugherty's exam revealed that plaintiff had a prominent callous at the dorsum of the right finger metacarpal with no tenderness; no false motion; no evidence of rotational malalignment of the ring finger; limited motion of his digits' joint due to the splint; and normal sensation to light touch and scratching. After examination, Dr. Daugherty noted "Impression: Right ring finger metacarpal neck fracture, healing with some apex dorsal angulation. Plan: Discontinue splint. Work on range of motion and strengthening. No further follow up indicated unless the patient sustains re-injury." (ECF No. 43-6 at 28-29.)

Plaintiff disputes that he was seen again by Dr. Cook on August 31, 2012 as Dr. Cook's examination notes indicate. (*See* ECF No. 48 at 30.) However, plaintiff does not dispute that, when he saw NP Velardi on September 4, 2012 and complained of chronic pain, the reason NP Velardi gave him for not renewing his Tylenol #3 prescription that had expired on August 29, 2012 was that Dr. Cook had just seen plaintiff on August 31, 2012 and prescribed Indomethacin for plaintiff's pain in place of the Naproxen. (See ECF No. 48 at 33.) Plaintiff also does not appear to be disputing that his medication list indicates that Dr. Cook prescribed a different pain medication for plaintiff on August 31, 2012. (*See* ECF No. 43-6 at 33.)

On September 11, 2012, plaintiff submitted another Health Care Services Request form requesting pain medication for his right hand and lower back and to see Dr. Cook.

7

Plaintiff alleged that he was in constant extreme pain (i.e. "[B]etween 8-9 on scale of 1-10"), that the pain disturbed his sleep pattern, and that the pain impaired his daily functioning. However, on September 13, 2012, Nurse Boucher noted that plaintiff's right wrist brace was intact, that plaintiff's pain was at "6 [on a] scale 1-10," that no swelling but a deformity was present, that no urgent or emergency situation existed, that plaintiff had recently seen Dr. Cook, and that there were no signs of acute distress. (*See* ECF No. 48 at 134.)

On September 26, 2012, NP Velardi examined plaintiff in response to a healthcare appeal ("602") seeking, *inter alia*, the name of x-ray technicians, expedited pain medication, and exemplary damages for injuries. NP Velardi ordered another x-ray of plaintiff's right hand "ASAP" and added Tylenol #3 and amitriptyline for pain to plaintiff's medication list. (*See* ECF No. 43-4 at 3; ECF No. 43-6 at 35-36.)

On October 10, 2012, NP Velardi saw plaintiff again. In response to his complaint about persistent pain, she referred him to TTA for splinting and also ordered that plaintiff's Tylenol #3 prescription be renewed "Stat." (ECF No. 43-4 at 3; ECF No. 43-6 at 49; ECF No. 48 at 137, 139, 143.)

## DISCUSSION

### A. Governing Law

The Eighth Amendment's proscription against cruel and unusual punishment encompasses the government's obligation to provide adequate medical care to those whom it is punishing by incarceration. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed 2d 251 (1976). In order to establish an Eighth Amendment claim based on inadequate medical care, a plaintiff must show that the defendant was deliberately indifferent to his serious medical needs. *See Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993); *Gamble*, 429 U.S. at 106; *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Deliberate indifference to the serious medical needs of a prisoner constitutes

the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *McKinney*, 509 U.S. at 32; *Gamble*, 429 U.S. at 104; *McGuckin*, 974 F.2d at 1059.

A "serious" medical need arises if the failure to treat the plaintiff could result in further significant injury or the "unnecessary and wanton infliction of pain." *Gamble*, 429 U.S. at 104; *McGuckin*, 974 F.2d at 1059.

Deliberate indifference may be manifested by the intentional denial, delay or interference with the plaintiff's medical care, or by the manner in which the medical care was provided. *Gamble*, 429 U.S. at 104-05; *McGuckin*, 974 F.2d at 1059. The defendant, however, must purposefully ignore or fail to respond to the plaintiff's pain or medical needs. *McGuckin*, 974 F.2d at 1060. Thus, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care (without more), nor a difference of opinion over proper medical treatment, is sufficient to constitute an Eighth Amendment violation. *See Gamble*, 429 U.S. at 105-06; *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nevada Bd. of State Prison Commissioners*, 766 F.2d 404, 407 (9th Cir. 1984). The Eighth Amendment does not require optimal medical care or even medical care that comports with the community standard of medical care. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *See Gamble*, 429 U.S. at 106; *see also, e.g.*, *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995); *McGuckin*, 974 F.2d at 1050; *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980). Accordingly, even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

//
//

B. **Analysis**

   1. NP Velardi is entitled to summary judgment.

The gravamen of plaintiff's Eighth Amendment claims against NP Velardi is that her delay in treating plaintiff's injured hand and her failure to prescribe suitable pain medication displayed deliberate indifference toward plaintiff's serious medical needs. (*See* ECF No. 33; ECF No. 48.) Defendants assert that NP Velardi's actions in response to plaintiff's requests for treatment did not demonstrate deliberate indifference. (ECF No. 43-1 at 13-14.) Notwithstanding, defendants contend that qualified immunity applies. (*Id.* at 17-19.)

Generally, a "delay in providing a prisoner" with medical care, "standing alone, does not constitute an eighth amendment violation." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). Medical delay supports a constitutional claim only if it was harmful. *Shapley v. Nev. Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citation omitted). The uncontroverted evidence does not present a genuine issue of material fact as to whether NP Velardi was deliberately indifferent to the need for treatment of plaintiff's injured finger. The uncontroverted evidence shows that, after NP Velardi ordered a "routine" x-ray of plaintiff's right hand on July 30, 2012, the x-ray was performed two days later. Although plaintiff contends that NP Velardi should have scheduled plaintiff for an immediate x-ray, he has adduced no evidence that the two-day delay was harmful.

NP Velardi reviewed the x-ray report on August 7, 2012 and immediately determined that plaintiff should be scheduled for a follow up medical appointment "ASAP Next Available." Despite NP Velardi's instruction, no follow up occurred until August 14, 2012 and plaintiff's finger went from "mildly displaced fracture" to a "complete fracture" during the delay in treatment. However, even viewing the evidence in the light most favorable to plaintiff, the nonmoving party, plaintiff has failed to show that the ensuing seven-day delay in treatment was attributable to NP Velardi. According to the "CCHCS Attachment A - Detailed Scheduling Roles and Responsibilities" that plaintiff has provided, nurse practitioners do not have any scheduling responsibilities under the

"Scheduling and Access to Care Procedure" policy. (*See* ECF No. 48 at 47-52.) Moreover, scheduling does not appear under the nurse practitioner duties within the Nurse Practitioner Duty Statement. (*See id.* at 40.) The Court therefore finds that plaintiff has not shown how the seven-day delay was attributable to NP Velardi when she called for immediate follow up medical services to be rendered. *Francis v. Cate*, 2011 WL 2119024, at *12 (E.D. Cal. May 26, 2011) (finding plaintiff presented no evidence that defendant was responsible for scheduling follow up appointments).

Moreover, even assuming *arguendo* that NP Velardi was negligent by not scheduling plaintiff for an earlier appointment with Dr. Cook immediately after she reviewed plaintiff's x-ray report on August 7, 2012[1] or should have confirmed that plaintiff was given an "Open Access" appointment after she determined that plaintiff needed medical services ASAP on that date,[2] her conduct does not rise to the level of deliberate indifference. *See Estelle*, 429 U.S. at 106 (finding that an inadvertent failure to provide adequate medical care does not rise to an unnecessary and wanton infliction of pain); *see also Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) ("[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.") "Deliberate indifference" only exists when an official acts or fails to act while knowing that a prisoner faces a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Plaintiff has adduced no evidence showing that NP

---

[1] The evidence shows that, *inter alia*, one of NP Velardi's duties was to make appropriate referrals to other health professionals. (*See* ECF No. 48 at 40.)

[2] "Open Access" is a scheduling strategy in which "appointment times or blocks [] are left open . . . to accommodate walk-in patients, patients with urgent health needs, and patients with routine health needs that would benefit from expedited services." (*See* ECF No. 48 at 47.) The Court notes that the effective date of the "Scheduling and Access to Care Procedure" policy that plaintiff attached as an exhibit was June 2016. (*See id.*) In light of defendants' failure to address the effective date of the policy and viewing the evidence in the light most favorable to plaintiff, the Court presumes this policy was also in effect between July 2012 and November 2012.

Velardi knew or should have known that plaintiff's fracture would increase or develop a deformity during the period of delay. In addition, the form NP Velardi used to schedule plaintiff's follow up appointment indicates that its three copies are distributed as follows: the original copy is filed in UHR (an inmate's Unit Health Record), the scheduler receives the canary copy, and the inmate receives the pink copy. (*See* ECF No. 43-6 at 13.) Thus, NP Velardi would not have had any knowledge of the follow up appointment until it was scheduled. Accordingly, the Court concludes that the one week delay for plaintiff's follow up appointment does not create a genuine issue of material fact regarding whether NP Velardi was deliberately indifferent to his serious medical needs. *See Stocker v. Warden*, 2009 WL 981323, *8 (E.D. Cal. April 12, 2009) (finding that plaintiff failed to raise a genuine issue that the scheduling delay was due to deliberate indifference when the appointment form was not given to the named defendant doctor).

Plaintiff also claims the NP Velardi was deliberately indifferent to his serious medical needs when NP Velardi refused to prescribe him pain medication "of suitable strength . . . with a specific intent of allowing [him] to suffer the agony of the pain as punishment[.]" (ECF No. 33 at 4.) However, the uncontroverted facts show that NP Velardi was simply following department policy to provide medical services based on medical necessity and efficacy in her judgment. (*See* ECF 48 at 102.) Although she didn't prescribe any pain medication when she ordered the x-ray on July 30, 2012, plaintiff's medical records evidence that NP Velardi had prescribed a 30-day supply of a pain reduction drug, Naproxen, to plaintiff on July 24, 2012. When NP Velardi next saw plaintiff on August 15, 2012, she responded to his request for a stronger pain medication by prescribing Tylenol #3 with Codeine and requested that the pharmacy fill the prescription quickly. When she saw plaintiff on September 4, 2012, she had a reason for not refilling his prescription, which she explained to plaintiff. His medical records indicated that Dr. Cook had just seen plaintiff on August 31, 2012 and made an adjustment in his pain medication. However, when NP Velardi then saw plaintiff again on September 26, 2012 in response to a healthcare appeal seeking *inter alia* expedited pain medication,

she did add Tylenol #3 and amitriptyline for pain to plaintiff's medication list. And, when she saw plaintiff again on October 10, 2010, and he still was complaining about persistent pain, she ordered that his Tylenol #3 prescription be refilled "Stat."

Thus, plaintiff's allegation that NP Velardi did not prescribe additional pain medication to cause him to suffer in agony is unsupported. The Court finds that plaintiff's disagreement with the manner in which NP Velardi managed his pain medication is insufficient to raise a genuine issue of material fact. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to Sanchez['s] serious medical needs."); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."); *Gauthier v. Stiles*, 402 Fed. App'x 203 (9th Cir. 2010) (dissatisfaction with the denial of prescription strength pain medicine does not constitute deliberate indifference to serious medical needs).

2. Dr. Cook is entitled to summary judgment.

The gravamen of plaintiff's Eighth Amendment claim against Dr. Cook is that his failure to prescribe plaintiff the pain medication plaintiff desired amounted to deliberate indifference to a serious medical need. (*See* ECF No. 33.) Specifically, plaintiff alleges that Dr. Cook refused to prescribe him "a suitably strong pain management medication[.]" (*Id.* at 6.) Defendants contend that plaintiff's difference of opinion with Dr. Cook's treatment plan is not actionable. (ECF No. 43-1 at 15.) The Court agrees.

The uncontroverted evidence does not present a triable issue of fact. The record shows that, during plaintiff's August 14, 2012 follow up appointment, Dr. Cook advised him to continue using Naproxen to manage his pain symptoms and that Tylenol would be prescribed. (ECF No. 43-6 at 17.) Dr. Cook noted that plaintiff "became argumentative" and "stated [that he] will file 'paperwork'" when Dr. Cook chose to only prescribe Tylenol. (*Id.*) Plaintiff wanted "medical management of pain." (*Id.*; *see* ECF No. 48 at 117.) Notwithstanding Dr. Cook's orders, NP Velardi prescribed a 14-day supply of Tylenol #3

13

with Codeine to plaintiff the next day, which would help him manage his pain until his orthopedic evaluation by Dr. Daugherty. (*See* ECF No. 48 at 119.) According to plaintiff, he never had occasion to see Dr. Cook again for treatment of his right hand, following the initial August 14, 2012 treatment. (*See* ECF No. 48 at 10.)

The Court finds that plaintiff's mere disagreement with Dr. Cook's chosen course of treatment, without more, simply is not enough to raise a genuine dispute of material fact. Whereas defendants have adduced expert opinion evidence that plaintiff "received appropriate and due care to his medical needs and concerns from NP Velardi and Dr. Cook" (*see* ECF No. 43-2 at 11), plaintiff has not adduced any expert opinion evidence to the contrary. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (finding that to establish that a difference of opinion amounted to deliberate indifference, a prisoner must show that the defendant's chosen course of treatment was medical unacceptable and in conscious disregard of an excessive risk to the prisoner's health); *see also Toguchi*, 391 F.3d at 1058-60 (neither a difference of opinion concerning the course of treatment nor negligence in treating a medical condition amounts to deliberate indifference).

3. <u>The Court's findings above render it unnecessary to reach defendants' qualified immunity defense.</u>

The Court's finding that plaintiff has failed to raise a genuine issue of material fact as to whether defendants acted with deliberate indifference to his serious medical needs renders it unnecessary to reach defendants' qualified immunity arguments. *See, e.g.*, *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 n.6 (9th Cir. 2009); *Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 590 n.9 (5th Cir. 2004); *Frost v. Symington*, 197 F.3d 348, 358 (9th Cir. 1999); *Sims v. Lopez*, 2015 WL 1497267, at *20 (E.D. Cal. Mar. 31, 2015); *Lopez v. Spurgeon*, 2015 WL 971704, at *5 n.3 (N.D. Cal. Mar. 3, 2015); *Petty v. Shojaei*, 2014 WL 7375606, at *9 n.7 (C.D. Cal. Dec. 23, 2014).

//
//

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; (2) granting defendants' summary judgment motion; and (3) directing that Judgment be entered dismissing this action with prejudice.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

IT IS SO ORDERED.

Dated: August 14, 2018

_____
ROBERT N. BLOCK
United States Magistrate Judge